UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| John DOE, | Case No.: 23-cv-0251-AGS-KSC |
|---|---|
| Plaintiff, | **ORDER GRANTING COUNTY'S MOTION TO DISMISS (ECF 20) AND DENYING OTHER DISMISSAL MOTIONS (ECF 19, 21)** |
| v. | |
| COUNTY OF SAN DIEGO, et al., | |
| Defendants. | |

According to plaintiff, in response to an anonymous tip that he was suicidal, a police team entered his backyard and pointed a gun at him through his window. Without a warrant, they purportedly came into his home, handcuffed him, and transported him to a psychiatric hospital—which promptly released him. Doe later sued the County and the arresting team members. His complaint largely survives the ensuing motions to dismiss.

## BACKGROUND[1]

When this fateful event began, plaintiff John Doe was home folding laundry. (ECF 12, at 3–4.) He was suffering no "current mental health problems," taking no "medications," and undergoing no psychiatric "treatment." (*Id.* at 4.) Nonetheless, an "unidentified reporting party[]" alerted police that Doe "was a threat to himself." (*Id.*) A Psychiatric Emergency Response Team (PERT) was dispatched, including the three named individual defendants: San Diego Sheriff's deputies Christopher Cadigan and Amber Sprague and psychiatric clinician Ashley LeBlanc. (*Id.* at 2–3.)

Although they lacked a warrant, the PERT responders bypassed Doe's privacy fence and entered his backyard. (ECF 12, at 3–4.) Doe noticed them through a window, asked them to leave, and indicated he would "record the encounter with his cellphone camera."

---

[1] For motion-to-dismiss purposes, this Court accepts "the factual allegations in the [amended] complaint as true" and construes them "in the light most favorable to the plaintiff." *GP Vincent II v. Estate of Beard*, 68 F.4th 508, 514 (9th Cir. 2023).

1

(*Id.* at 4.) In response, Deputy Sprague "pulled her gun and aimed it at" Doe. (*Id.*) The deputies entered Doe's home, "knocked the cellphone out of [his] hand," shackled him, and "forced him into his backyard." (*Id.*)

Part of clinician LeBlanc's job was to determine if there was "probable cause" for a psychiatric-emergency-related detention under California Welfare and Institutions Code section 5150. (ECF 12, at 4.) Although Doe denied any mental-health "problems," "treatment," or "medications"—and "remained calm"—LeBlanc concluded that he was a "danger to himself" due to a "mental health disorder." (*Id.*) She therefore authorized Doe's 72-hour detention. (*Id.*)

Doe stayed "handcuff[ed] for over two hours" until they finally reached a "psychiatric hospital." (*Id.* at 4–5.) That facility "immediately discharged" him "because he did not meet any of the criteria for an involuntary detention." (*Id.* at 5.) His handcuffing injuries persisted "for many months after the arrest." (*Id.*)

Doe sued the deputies, clinician LeBlanc, and the County for various common-law torts and civil-rights violations, including excessive force and unreasonable seizure. Each defendant moves to dismiss at least one claim.

## DISCUSSION

To survive a dismissal motion, a complaint must contain enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also* Fed. R. Civ. P. 12(b)(6). Facial plausibility requires more than mere "conclusions" or a "formulaic recitation" of elements; it must be based on "factual allegations" that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).

**A.  County of San Diego's Motion to Dismiss**

Doe does not oppose the motion to dismiss his *Monell* failure-to-train claim against the County, so it is dismissed.  (*See* ECF 20-1, at 1; ECF 25); *see also Monell v. Department of Soc. Servs.*, 436 U.S. 658 (1978).

### B. Deputies' Motion to Dismiss

Deputies Cadigan and Sprague move to dismiss Doe's claims for Bane Act violations and for invasion of privacy. (ECF 19-1, at 1.)

### 1. *Bane Act*

California's Bane Act allows anyone "whose exercise or enjoyment of constitutional or statutory rights has been interfered with by 'threats, intimidation, or coercion' to sue the perpetrator for damages." *Venegas v. County of Los Angeles*, 63 Cal. Rptr. 3d 741, 750 (Ct. App. 2007) (quoting Cal. Civ. Code § 52.1(b)). Doe alleges Bane Act violations based on excessive force and unreasonable seizure. (ECF 12, at 8.) For a Bane Act claim based on excessive force, a plaintiff must plausibly allege facts demonstrating that the defendant "intended not only the force, but its unreasonableness [and] its character as more than necessary under the circumstances." *Reese v. County of Sacramento*, 888 F.3d 1030, 1045 (9th Cir. 2018). On the other hand, when unreasonable seizure forms the basis of the claim—once "an unlawful arrest is properly pleaded and proved"—plaintiff need only allege circumstances indicating that the officer "had a specific intent to violate the arrestee's right to freedom from unreasonable seizure." *Cornell v. City of San Francisco*, 225 Cal. Rptr. 3d 356, 384 (Ct. App. 2017). Thus, for any Bane Act claim, "some showing of intent *in addition to* showing the constitutional violation" is required. *Reese*, 888 F.3d at 1044 (emphasis added); *see also Losee v. City of Chico*, 738 F. App'x 398, 401 (9th Cir. 2018) (noting the "additional intent requirement under the Bane Act"). But facts demonstrating "reckless disregard" meet that burden, because "a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights." *Reese*, 888 F.3d at 1045.

The deputies argue that Doe fails to plead facts plausibly alleging their "specific intent to violate his constitutional rights" and instead merely relies on "conclusory statements" about their "reckless disregard." (ECF 19-1, at 5.) But Doe goes well beyond conclusory allegations. He contends that "Sprague (among others) pulled her gun and aimed it at" Doe—a putatively suicidal person who presented no apparent threat—then

struck his phone from his hand and handcuffed him "for over two hours." (ECF 12, at 4–5.) Taking these allegations as true and drawing all inferences in plaintiff's favor, Doe has plausibly pleaded that the "character" of the force employed was "more than necessary under the circumstances." *See Reese*, 888 F.3d at 1045. "In the Ninth Circuit, an officer's [unjustified] use of a gun constitutes excessive force when the weapon is aimed or pointed at a suspect." *Sen v. City of Los Angeles*, No. 2:21-CV-02326-SB-KES, 2022 WL 2236085, at *10 (C.D. Cal. Apr. 20, 2022). These facts plausibly support a further inference that the officers acted with reckless disregard of Doe's rights. *See, e.g.*, *Luna v. County of Riverside*, No. EDCV 21-0467 JGB (SPx), 2023 WL 7803386, at *15 (C.D. Cal. Oct. 20, 2023) (finding that "handcuffing [plaintiff] with enough force to cause physical injury" sufficiently alleged reckless disregard); *Carr v. County of San Diego*, No. 19-cv-1139 JLS-MDD, 2020 WL 1046874, at *5 (S.D. Cal. Mar. 4, 2020) (inferring sufficient reckless disregard from plaintiff's allegation that he was "handcuffed and arrested for nothing more than suffering a diabetes-related medical emergency"); *Smith v. City of Marina*, No. 22-CV-07308-PCP, 2024 WL 34401, at *8 (N.D. Cal. Jan. 3, 2024) ("At the motion to dismiss stage, . . . allegations of conduct that violates constitutional rights coupled with allegations that the conduct was done with reckless disregard for a party's rights can be sufficient to establish specific intent.").

The deputies also attack Doe's unreasonable-seizure-based Bane Act claim, arguing that he fails to plead facts establishing the arrest was unlawful in the first place. (ECF 27, at 2). But when read in Doe's favor, the complaint plausibly alleges that he was arrested without probable cause and that no other circumstances justified his detention. For emergency detentions under California Welfare and Institutions Code section 5150, California employs a "standard similar" to "the test for probable cause for a warrantless arrest." *People v. Triplett*, 192 Cal. Rptr. 537, 540 (Ct. App. 1983). That is, a detaining officer must know "specific and articulable" facts "that would lead a person of ordinary care and prudence to believe, or to entertain a strong suspicion, that the person detained is

4

mentally disordered and is a danger to himself or herself or is gravely disabled." *Id.* at 540–41.

The deputies allegedly relied for probable cause on (1) an anonymous tip that Doe "was a threat to himself" and (2) "a belt lying on the floor inside of the master bedroom." (ECF 12, at 4.) But an anonymous tip alone generally will not support probable cause unless "significant details of the tip [are] corroborated." *Hopkins v. City of Sierra Vista*, 931 F.2d 524, 528 (9th Cir. 1991). The complaint pleads no facts about any such confirming details. *See Farmer v. County of Calaveras*, No. 1:18-cv-00009-DAD-SAB, 2018 WL 1919900, at *3–4 (E.D. Cal. Apr. 24, 2018) (finding lack of probable cause plausibly pleaded when detention of allegedly suicidal individual was based solely on an "unsubstantiated report" "that did not provide further detail or corroboration").

That leaves only the belt. There is nothing in the complaint suggesting that the belt is of any particular significance—as it may have been if the tipster said Doe planned to harm himself with a belt or by hanging. Nor is its placement on a bedroom floor uncommon or suspicious. Simply spotting a belt in a location where one would commonly expect to find stray articles of clothing, without more, does not raise an inference that Doe intended to hurt himself or others. *Cf. Butler v. City of Philadelphia*, 614 F. App'x 69, 72 (3d Cir. 2015) (finding that "a belt in a location suggesting that Butler used it in conjunction with the needle; and that there were other items in the car that appeared to be either illegal drugs or the trappings thereof—w[as] sufficient to establish probable cause"). Perhaps additional facts will make more of the belt, but, at the motion-to-dismiss stage, it is too thin a reed to support probable cause.

Finally, nothing in the complaint indicates exigent circumstances precluding further investigation. Exigent circumstances are those that "would cause a reasonable person to believe that entry (or other relevant prompt action) was necessary to prevent physical harm," including when there is a "need to protect or preserve life or avoid serious injury." *United States v. Echegoyen*, 799 F.2d 1271, 1278 (9th Cir. 1986); *see also Duvall v. City of Santa Monica*, 42 F.3d 1399 (9th Cir. 1994) (holding exigent circumstances existed

5

when plaintiff "had telephoned his mother to tell her he was armed and suicidal, asked her to listen as he clicked the trigger of a gun aimed at his temple, and told her he 'fe[lt] like going out and killing everybody'"). Reliable indications of imminent self-harm are certainly exigencies of the highest order. But reliability is lacking here. Only an anonymous and uncorroborated call formed the basis for entry; Doe remained calm throughout the encounter and denied "any current mental health problems." (ECF 12, at 4.) Of course, for present purposes, the Court is confined to the factual universe of Doe's allegations. Exigent circumstances may become clearer in the subsequently developed record.

For now, though, it remains plausible that defendants unlawfully detained Doe in "reckless disregard" of his Fourth Amendment rights, which is "evidence of a specific intent to deprive that person of those rights." *See Reese*, 888 F.3d at 1045. The Bane Act claims survive.

### 2. *Invasion of Privacy*

To prove invasion of privacy in California, a plaintiff must satisfy three elements: "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct by the defendant that amounts to a serious invasion of the protected privacy interest." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1024 (N.D. Cal. 2012) (citing *Hill v. National Collegiate Athletic Assn.*, 865 P.2d 633, 657 (Cal. 1994)).

Doe had a "legally protected privacy interest" in "making intimate personal decisions or conducting personal activities without observation, intrusion, or interference." *Hill*, 865 P.2d at 654. At the "very core" of the Fourth Amendment is "the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Florida v. Jardines*, 569 U.S. 1, 1 (2013) (cleaned up). When defendants entered Doe's property, they interrupted him as he was "folding laundry in the hallway inside of his home." (ECF 12, at 4.) Taking as true Doe's allegations about a want of probable cause, Doe has plausibly pleaded a violation of his protected privacy interests.

The deputies argue that there is "a compelling state interest for law enforcement to be able to perform their duties in responding to a call for a wellness check regarding a

concern that someone may be about to engage in self-harm." (ECF 27, at 4.) Quite so, but the Fourth Amendment cannot give way to every anonymous tip. Doe has sufficiently alleged that defendants did not perform their duties reasonably, given the meager information at hand. Similarly, the deputies contend that, in the context of a wellness check, the conduct here—"entering Plaintiff's backyard, peering through the windows and entering his home"—does not constitute a "'serious' invasion of Plaintiff's privacy interest." (ECF 19-1, at 6.) But whether, in the totality of the circumstances, "defendant's conduct constitutes a serious invasion of privacy" is a "mixed question[] of law and fact." *Hill*, 865 P.2d at 657. At the pleading stage, Doe has alleged enough facts to support his claim. *See Kim v. City of Belmont*, No. 17-CV-02563-JST, 2018 WL 500269, at *1, 12 (N.D. Cal. Jan. 22, 2018) (finding invasion-of-privacy claim sufficient based on allegations that police officers "forcibly entered" plaintiff's home to arrest him without a warrant or probable cause). The deputies' motion to dismiss the privacy claims is denied.

### 3. *Punitive Damages*

Punitive damages may be awarded on a civil-rights claim under 42 U.S.C. § 1983 "either when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others." *Morgan v. Woessner*, 997 F.2d 1244, 1255 (9th Cir. 1993) (cleaned up). Punitive damages for claims arising under California law are authorized by statute; these require "clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294.

The deputies insist that Doe's "bare allegations" and "conclusory assertions" are insufficient to maintain a demand for exemplary damages. (ECF 19-1, at 7.) Whether Doe's allegations indicate sufficient "callous indifference" or "oppression, fraud, or malice" is a heavily fact-based determination. But the complaint is certainly not devoid of facts that suggest improper motive. Take, for example, Sprague's aiming her sidearm at Doe, allegedly unprovoked, and then entering his residence to knock his phone from his hand. (ECF 12, at 4.)

The Ninth Circuit has suggested that it may be proper to dismiss certain damages demands on a Rule 12(b)(6) motion, when those claims "are precluded as a matter of law." *Whittlestone, Inc. v. Handi-Craft Co.,* 618 F.3d 970, 974–75 (9th Cir. 2010). But Doe's request is not so precluded; he has alleged facts that could conceivably entitle him to exemplary damages. After all, punitive damages are a remedy, not a cause of action, and dismissing colorable requests for relief before evidence is developed would put the cart before the horse. *See, e.g.*, *Kevorkian v. Safeco Ins. Co. of Am.*, No. 3:23-cv-00229-RBM-DDL, 2023 WL 6612497, at *9–10 (S.D. Cal. Oct. 10, 2023) (surveying caselaw and declining to dismiss request for punitive damages when complaint "plausibly state[d] a claim for" them); *Davis v. City of San Jose*, No. 14-cv-02035-BLF, 2014 WL 2859189, at *9 (N.D. Cal. June 20, 2014) (doubting whether "*Whittlestone* authorizes the dismissal of a prayer for punitive damages at this stage" and declining to do so); *Villareal v. City of Indio*, No. ED CV16-00141 JAK (DTBx), 2016 WL 6678010, at *10 (C.D. Cal. June 20, 2016) (finding "little purpose would be served" by assessing the propriety of punitive damages until evidence develops in discovery); *Lion Raisins, Inc. v. Connecticut Indem. Co.*, No. 03-cv-6744-OWW-DLB, 2006 WL 509536, at *17 (E.D. Cal. Mar. 2, 2006) (explaining that, at "the pleading stage," a plaintiff need not establish an entitlement to punitive damages by the "clear and convincing evidence" standard that governs their later award). For now, Doe may continue to pursue punitive damages.

**C.   Psychiatric Clinician LeBlanc**

Clinician LeBlanc moves to dismiss the complaint in full or, alternatively, to dismiss the claims for unreasonable seizure, false arrest, and negligence.[2]

---

[2] The Court grants LeBlanc's unopposed motion for judicial notice of a blank standardized form and of the operative complaint, though neither affects the analysis here. *See* Fed. R. Evid. 201; (ECF 21-2, at 3–19).

8

### 1. *Complete Dismissal*

LeBlanc's primary argument is that she is immune from liability under the Lanterman-Petris-Short Act. (ECF 21-1, at 11–12.) That Act grants immunity to individuals authorized to detain people under section 5150, guaranteeing that they "shall not be held either criminally or civilly liable for exercising this authority in accordance with the law." Cal. Welf. & Inst. Code § 5278. But it immunizes only those "who make the decision to detain, when that decision is supported by probable cause." *Jacobs v. Grossmont Hosp.*, 133 Cal. Rptr. 2d 9, 13 (Ct. App. 2003).

As discussed above, Doe has pleaded enough facts to call into question the probable-cause determination. LeBlanc admits that she "relied on an anonymous tip and [her] own contemporaneous observations while at Plaintiff's residence." (ECF 21-1, at 12.) Yet, as previously noted, an uncorroborated anonymous tip is an insufficient basis for probable cause. *Hopkins,* 931 F.2d at 528. And there are no additional facts the Court can rely on in the complaint to conclude that LeBlanc's observations supported her probable-cause conclusion. Doe alleged only that he "was folding laundry" when the encounter began and that he remained "calm" throughout. (ECF 12, at 4.) *See Haines v. Brand*, No. C-11-1335 EMC, 2011 WL 6014459, at *8 (N.D. Cal. Dec. 2, 2011) (finding claim stated for lack of probable cause when there were "no allegations" by plaintiff of "signs of disordered thinking, verbal or physical outbursts, or signs of previous or current attempts to harm himself").

LeBlanc makes two other arguments for dismissal in full. First, she contends that Doe failed to plausibly plead that his arrest was "actually unlawful under state and federal law." (ECF 21-1, at 16.) And she asserts that the complaint lacks facts to support Doe's claim that his detention "constituted an unjustified deprivation of his Fourth Amendment rights." (*Id.* at 12.) Both arguments fail, as discussed above. Doe plausibly pleads that defendants lacked both a warrant and probable cause and that no exigent circumstances existed—and thus that his detention was unlawful and unconstitutional. LeBlanc's motion for a complete dismissal is denied.

### 2. *Unreasonable Seizure (42 U.S.C. § 1983)*

Homing in on the unreasonable-seizure claim, LeBlanc maintains that she was not acting "under color of law," as required for section 1983 liability. (ECF 21-1, at 17); *see Chudacoff v. University Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1149 (9th Cir. 2011). LeBlanc argues that, as a PERT clinician, she was "a private physician" and "a private party is normally not liable for constitutional violations." (ECF 21-1, at 17.)

Acting "'under color of' state law . . . does not require that the defendant be an officer of the State. It is enough that [the defendant] is a willful participant in joint action with the State or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27 (1980). Accordingly, private citizens, "jointly engaged with state officials in a challenged action," can act "under color of law" for purposes of a section 1983 civil-rights claim. *Id.* at 27–28.

In her role here, LeBlanc was indeed not an officer of the state, but rather a PERT clinician partnering with the San Diego Sheriff. (ECF 12, at 2.) "PERT is a county mental health contractor that works side by side with law enforcement agencies." *Nguyen v. Lopez*, No. 11CV2594-WQH-MDD, 2015 WL 9308285, at *4 (S.D. Cal. Dec. 21, 2015); *see also Estate of Silva v. City of San Diego*, No. 18CV2282-MMA-MSB, 2019 WL 3220165, at *1 n.4 (S.D. Cal. July 17, 2019) ("PERT pairs licensed mental health clinicians with uniformed law enforcement officers/deputies.").

By riding with the deputies to plaintiff's home and engaging in the same conduct, LeBlanc worked "side by side" with them and plausibly was a "willful participant in joint action with [the state's] agents." *Nguyen*, 2015 WL 9308285, at *4. Whether this relationship constitutes state action is a "fact-intensive . . . inquiry." *Lee v. Katz*, 276 F.3d 550, 554 (9th Cir. 2002). But at the pleading stage, Doe has sufficiently alleged LeBlanc operated as a "willful participant in joint activity with the State or its agents." *See Brentwood Acad. v. Tennessee Secondary Sch. Athletic Assn.*, 531 U.S. 288, 296 (2001). Doe may continue to prosecute his claim for unreasonable seizure.

### 3. *False Arrest/Imprisonment (Common-Law Tort)*

As a threshold matter, LeBlanc contends that the litigation privilege renders her immune to the false-arrest claim. (*See* ECF 21-1, at 21–22.) "California's litigation privilege applies to any communication . . . made in judicial or quasi-judicial proceedings." *Graham-Sult v. Clainos,* 756 F.3d 724, 741 (9th Cir. 2014). LeBlanc advances the novel argument that Doe's arrest was "essentially a quasi-judicial proceeding designed for the purpose of assessing whether a mental health evaluation is warranted." (ECF 21-1, at 22.) But arrests—even arrests entailing a mental-health assessment—are not quasi-judicial in nature. A "seizure of the mentally ill . . . is analogous to a criminal arrest," which is why it must be "supported by probable cause." *Maag v. Wessler*, 960 F.2d 773, 775 (9th Cir. 1991), *as amended on denial of reh'g* (Apr. 1, 1992). LeBlanc cites no on-point authority to the contrary.

Nor could she. After all, it is the special nature of the judicial process, which enjoys safeguards such as adversarial proceedings and the right to present evidence, that bestows "quasi-judicial" immunity on analogous proceedings. *See Butz v. Economou*, 438 U.S. 478, 511–13 (1978). By contrast, "[p]olice officers have never been granted an absolute immunity in making the decision to arrest." *Ray v. Pickett*, 734 F.2d 370, 374 (8th Cir. 1984). Here, LeBlanc's role (in concert with the deputies) was to determine whether there was probable cause to detain Doe under section 5150. That role is more akin to a peace officer than a magistrate or a prosecutor. Unilateral authority of this sort is not functionally comparable to a judicial proceeding, so LeBlanc was not cloaked in quasi-judicial immunity.

Turning to the meat of the matter, false arrest is not a stand-alone tort; "it is merely one way of committing a false imprisonment." *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1379 (9th Cir. 1998). And to sufficiently allege a claim of false imprisonment, a plaintiff must show: "(1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief." *Easton v. Sutter Coast Hosp.*, 95 Cal. Rptr. 2d 316, 323 (Ct. App. 2000).

11

LeBlanc first attacks this claim by arguing that Doe fails to plead facts showing that she engaged in "intentional conduct" that caused plaintiff's arrest. (ECF 21-1, at 21.) This argument misapprehends the first element of the tort. "The only mental state required to be shown to prove false imprisonment is the *intent to confine*, or to create a similar intrusion." *Fermino v. Fedco, Inc.*, 872 P.2d 559, 567 (Cal. 1994) (emphasis added). The complaint alleges that LeBlanc, with the deputies, intended to (and did) confine Doe "for over two hours." (ECF 12, at 5.) The "appreciable length of time" necessary under California law "can be as brief as 15 minutes." *Fermino*, 872 P.2d at 567.

Turning to the second element, LeBlanc contends that she is immune from liability for acting under section 5150 "in accordance with the law." (ECF 21-1, at 20.) As explained above, the complaint plausibly alleges that she acted without probable cause—that is, without lawful authority. Doe also pleads sufficient facts to call into question the constitutionality of his arrest, foreclosing LeBlanc's final argument against this claim. Thus, Doe may pursue his claim for false arrest or imprisonment.

**4.** *Negligence*

Lastly, LeBlanc moves to dismiss Doe's negligence claim, arguing that he failed to "articulate a legal duty of care" she owed him. (*See* ECF 21-1, at 23.) She maintains that she "does not have the same duties of care as law enforcement officers charged with using force." (*Id.*)

The elements of negligence "are duty, breach, causation, and injury." *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 912 (S.D. Cal. 2020). "Everyone is responsible . . . for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person." Cal. Civ. Code § 1714(A). LeBlanc owed a duty to exercise ordinary care in executing her responsibilities as a PERT clinician, which include authorizing detention only "upon probable cause." *See* Cal. Welf. & Inst. Code § 5150. As explained above, the complaint sufficiently calls this key point into question. Taking Doe's allegations as true, he has plausibly pleaded that LeBlanc made the decision to detain him with a "want of ordinary care." This was arguably both a but-for

and proximate cause of his arrest and handcuffing. As for damages, Doe alleged that he "suffered bodily injury caused by the handcuffs, symptoms of which continued for many months after the arrest." (*Id.* at 5) Thus, Doe has sufficiently pleaded negligence. *See Lomeli v. County of San Diego*, 637 F. Supp. 3d 1046, 1071 (S.D. Cal. 2022) (finding plaintiff "sufficiently alleged facts that, taken as true, state[d] a claim for negligence" when he plausibly alleged being arrested "without probable cause").

### 5. *Punitive Damages*

LeBlanc also seeks dismissal of Doe's claims for punitive damages against her. That request is denied for the same reasons the Court rejected the deputies' similar motion.

## CONCLUSION

The County of San Diego's motion to dismiss is **GRANTED**. The dismissal motions of deputies Cadigan and Sprague and clinician LeBlanc are **DENIED**.

Dated:  March 5, 2024

_____
Andrew G. Schopler
United States District Judge