DAMON M. BROWN, County Counsel (SBN 242265)
By: TIMOTHY A. HANNA, Senior Deputy (SBN 310620)
    STEVEN P. INMAN, II, Senior Deputy (SBN 227748)
Office of County Counsel, County of San Diego
1600 Pacific Highway, Room 355
San Diego, California 92101-2469
Telephone: (619) 904-0151; (619) 884-2931; Facsimile: (619) 531-6005
Email: Timothy.Hanna@sdcounty.ca.gov; Steven.Inman@sdcounty.ca.gov

Attorneys for Defendants County of San Diego, Christopher Cadigan, Amber Sprague, and Frank Spinelli

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| John Doe,<br><br>    Plaintiff,<br><br>    v.<br><br>County of San Diego, a government entity; Christopher Cadigan, an individual; Amber Sprague an individual; Ashley Leblanc, an individual; Frank Spinelli, an individual, and DOES 1 to 20, inclusive,<br><br>    Defendants. | No. 23-cv-00251-AGS-KSC<br><br>**REPLY TO PLAINTIFF'S OPPOSITION TO COUNTY DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGEMENT**<br><br>Date:          May 13, 2026<br>Time:          10:00 a.m.<br>Courtroom:  5C<br>Judge:        Hon. Andrew G. Schopler |

No. 23-cv-00251-AGS-KSC

## I.    INTRODUCTION

Plaintiff concedes in addressing applicability of the new Supreme Court decision in *Case v. Montana*, 223 L.Ed.2d 382 (2026) that the "objective reasonableness standard for warrantless home entries to render emergency aid applies without further gloss and was satisfied in this case." [ECF No. 94 at p. 8]. No factual dispute exists on this issue. The deputies believed Plaintiff was injured or in danger of imminent injury and Plaintiff's opposition puts forth no evidence to the contrary.

More broadly, Plaintiff's opposition fails to demonstrate the existence of any genuine issue of material fact sufficient to overcome the qualified and state law immunity grounds discussed in the County Defendants' motion. Such immunity exists to protect the Deputies' decision making in situations involving alleged mental health crises. As the First Circuit explained,

> [E]ncounters with individuals whom police reasonably believe to be experiencing acute mental health crises frequently confront police with precisely the sort of damned-if-you-do, damned-if-you-don't conundrum…If police officers are left twisting in the wind when they take decisive action to assist such individuals and prevent the dreadful consequences that might otherwise ensue, they would be fair game for claims of overreach and unwarranted intrusion. Conversely, if the lack of constitutional protection leads police officers simply to turn a blind eye to such situations and tragedy strikes, the officers would be fair game for interminable second-guessing.

*Caniglia v. Strom*, 953 F.3d 112, 125 (1st Cir. 2020), *vacated and remanded,* 593 U.S. 194, 141 S. Ct. 1596 (2021). In this incident, the Deputies' decisions were based on their observations and facts known to them at the time of this encounter which provided a "reasonable suspicion" that Plaintiff was at imminent risk of self-harm. Plaintiff fails to demonstrate "clearly established" law that would undermine the reasonableness of their suspicion under the undisputed material facts of this case.

///

///

///

-1-

## II.    IT IS NOT "CLEARLY ESTABLISHED" THAT THE DEPUTIES' DETENTION OF PLAINTIFF FOR THE DURATION OF THE EVALUATION OF THE PERT CLINICIAN WAS A 5150 ARREST RATHER THAN AN INVESTIGATIVE DETENTION

One question before this Court is whether it is "clearly established" that the Plaintiff's detention during that brief period "before the social worker clinician assessed Plaintiff" was an "arrest" under section 5150 rather than an investigative detention. In his opposition, Plaintiff contends the Deputies' detention of him "before the social worker clinician assessed Plaintiff" was without the probable cause required to affect a 5150 hold. (Plaintiff's Opposition to County Defendant's Motion for Summary Judgment ("Oppo") [ECF No. 94], p. 7.) However, Plaintiff fails to distinguish between detentions considered an arrest under section 5150 and an investigative detention in response to reports of an ongoing mental health crisis.

The relevant statute discusses the probable cause standard only in the context of the law enforcement officers' decision to "take, or cause to be taken, the person into custody for a period of up to 72 hours for assessment, evaluation, and crisis intervention, or placement for evaluation and treatment in a facility designated by the county for evaluation and treatment and approved by the State Department of Health Care Services." Cal. Welf. & Inst. Code § 5150(a). There is no dispute that the Deputies did not make the decision to transport him to a County facility until after the PERT Clinician's evaluation. The statute does not address the period of time at issue, the time between law enforcement responding to a reported mental health crisis and their decision to take the person into custody for a 5150 hold. Put differently, it is not "clearly established" that a brief investigative detention in response to a reported mental health crisis automatically constitutes an arrest under section 5150.

It is also unclear in this context when an investigative detention in a mental health response becomes a 5150 hold. "There is no bright-line rule to determine when an investigatory stop becomes an arrest." *Washington v. Lambert*, 98 F.3d 1181, 1185 (9th Cir. 1996). However, case law in the criminal arrest context demonstrates it is not "clearly

established" the Deputies could not consider this an investigatory detention under these circumstances. A valid investigatory stop must be temporary, based upon reasonable suspicion, and last no longer than necessary to effectuate the purpose of the stop. *Florida v. Royer,* 460 U.S. 491, 500 (1983). The investigative detention must be "reasonably related in scope to the circumstance which justified the interference in the first place." *Terry v. Ohio,* 392 U.S. 1, 20 (1968) "The whole point of an investigatory stop, as the name suggests, is to allow police to *investigate.*" *Gallegos v. City of Los Angeles*, 308 F.3d 987, 991 (9th Cir. 2002) (emphasis in original).

Here, the PERT Clinician's evaluation is an "investigation" of Plaintiff's mental state. There is no genuine dispute that Plaintiff refused to meet the Deputies at the door and retreated further into his home to avoid their efforts to evaluate his mental health. (County Defendant's Notice of Lodgment in Support of Motion for Partial Summary Judgment ("DNOL") [ECF No. 90-3), Exh. 7- Deputy Christopher Cadigan Body Worn Camera Footage ("Cadigan BWC"), CSD 000027 at 9:50-11:30.) In light of Plaintiff's behavior, there can be no genuine dispute that the PERT Clinician was unable to conduct her mental health evaluation at any time before Plaintiff was handcuffed and escorted to the back patio. It is far from clear that this matter ripened to an arrest instead of an investigative detention prior to the PERT clinician's evaluation.

### III. IT IS NOT "CLEARLY ESTABLISHED" THAT PROBABLE CAUSE IS REQUIRED FOR AN INVESTIGATIVE DETENTION TO INVESTIGATE REPORTS OF A MENTAL HEALTH CRISIS

It is equally unclear that probable cause applies to an investigative detention prior to the 5150 hold. There is no Ninth Circuit case defining the standard that applies to investigative detentions during a mental health welfare check. Only reasonable suspicion is required for an investigatory detention to investigate potential crimes. *United States v. I.E.V.*, 705 F.3d 430, 434–35 (9th Cir. 2012) (finding that an investigatory stop need only be justified by reasonable suspicion.) The law "permits brief investigative stops...when a law enforcement officer has only 'a particularized and objective basis for suspecting the

No. 23-cv-00251-AGS-KSC

particular person stopped of criminal activity.'" *Navarette v. California*, 572 U.S. 393, 396-97 (2014) (quoting *United States v. Cortez*, 449 U.S. 411, 417-418 (1981)).

In *Quinto-Collins v. City of Antioch*, 718 F. Supp. 3d 1033 (N.D. Cal. 2024), a District Court for the Northern District of California applied the "reasonable suspicion" standard to police investigation of an individual in a mental health crisis before the decision was made to put him on a 5150 hold. *Id.* at 1048. Applying that standard, the Court found that "no reasonable jury could conclude that Officers [] lacked reasonable suspicion to detain [the individual]." *Ibid.* The officers were responding to a 911 call that he was attacking his mother. *Ibid.* At the time initial contact was made, the individual's mother had him on the floor in a bear hug. *Ibid.* The Court considered the apparent lack of urgency considering the Mother appeared to have him in control and the Deputies were heard to be chuckling on the body worn camera footage but found that it "does not mean that officers lacked reasonable suspicion to detain [the individual] for purposes of investigating what both sides concede was a mental health crisis." *Ibid.*

Consequently, the Deputies are entitled to qualified immunity for their decision to detain Plaintiff for the PERT Clinician's evaluation unless it is clearly established they could not have had a "reasonable suspicion" Plaintiff was at risk of self-harm under these circumstances.

## IV.   IT IS NOT "CLEARLY ESTABLISHED" THAT THE CIRCUMSTANCES WERE INSUFFICIENT TO PROVIDE A "REASONABLE SUSPICION" THAT PLAINTIFF WAS AT IMMINENT RISK OF HARM

The Deputies' observations and knowledge at the time of the incident will govern whether they had a basis for a reasonable suspicion Plaintiff was at risk of harm sufficient to detain Plaintiff and search his residence. An action is "reasonable" under the Fourth Amendment, regardless of the individual officer's state of mind, "as long as the circumstances, viewed *objectively,* justify [the] action." *Scott v. United States,* 436 U.S. 128, 138 (1978).

///

As noted in section II above, the Deputies were justified if they had at least "reasonable suspicion" Plaintiff was at risk. When deciding whether detention is based upon reasonable suspicion, a court must look at the totality of the circumstances—deferring to a law enforcement officer's ability to draw upon specialized experience and training to draw inferences from and deductions about the cumulative information available to them that might well elude an untrained person. *United States v. Arvizu,* 534 U.S. 266, 273 (2002) (quoting *Cortez,* 449 U.S. at 418.)

As Plaintiff notes in his opposition, in the wake of the Supreme Court's decision in *Case*, 223 L.Ed.2d 382, the "objective reasonableness standard for warrantless home entries to render emergency aid applies." (Plaintiff's Oppo [ECF No. 94], p. 8.) This exception to the warrant requirement applies when law enforcement officers must enter the home "to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Brigham_City, Utah v. Stuart*, 547 U.S. 398, 404 (2006), citing *Mincey v. Arizona,* 437 U.S. 385, 392 (1978).

In his opposition Plaintiff cites *Bonivert v. City of Clarkston*, 883 F.3d 865 (9th Cir. 2018) to stand for the proposition that it was clearly established that there was not reasonable suspicion under these circumstances. *Bonivert* is readily distinguishable because it involved a police response to a report of domestic violence where the purported victim and her child were contacted outside of the home prior to the Deputies' entry. There were "no circumstances pointing to an actual or imminent injury inside the home" because the victim was no longer in the home. *Id. 877.* In this matter, the Deputies' entry was in response to Plaintiff's refusal to come to the door and his decision to retreat further in the home where he may have obtained an instrument of self-harm. Coupled with the other factor discussed below, there was an imminent threat within the home that was not present in *Bonivert*.

Plaintiff also relies on *Torres v. Hansen*, 16-CV-06607-SI, 2019 WL 4142158, at *10 (N.D. Cal. Aug. 30, 2019), another domestic violence response that bears little similarity to the facts at issue in the present case. In *Torres*, the District Court denied

No. 23-cv-00251-AGS-KSC

qualified immunity for officers' warrantless entry under the emergency aid exception in part because "Defendants do not present any evidence about the contents of the 911 call, other than the rather generic information that it involved a report of a 'fight.' Fights come in all stripes, including purely verbal fights, and a mere argument would provide scant justification to enter based on the emergency-aid or exigent-circumstances exceptions." *Id.* at *10. Unlike *Torres*, the 911 call at issue in this matter had specific, articulable facts that Plaintiff had stated an intention to commit suicide, a plan to do so, and had other factors in his life that may contribute to suicidal ideation.

This Court should instead follow the Ninth Circuit's decision in *Martin v. City of Oceanside*, 360 F.3d 1078 (9th Cir. 2004), in which the Ninth Circuit upheld the decision to grant summary judgment on qualified immunity grounds for a warrantless entry during a factually similar welfare check. *Id.* at 1081. The Officers based their reasonable suspicion on a phone call from a resident's father "stating that he was urgently concerned for the welfare of his daughter, and that she may be 'in trouble' inside the house." *Id.* at 1082. The Officers also found cars in the driveway suggesting someone was home but there was a "lack of response to repeated knocking, and an unanswered call to [the resident's] phone." *Ibid.*

Based on the undisputed facts before the Court, it is not "clearly established" that the totality of these circumstances was insufficient to support a "reasonable suspicion" that Plaintiff was at risk of self-harm. It is an undisputed fact that prior to the Deputies' initial contact with Plaintiff the Deputies directly communicated with two individuals who claimed Plaintiff intended to commit suicide. (DNOL [ECF No. 90-3], Exh. 2-Arrest Report, Case No. 21123192 ("Arrest Report") at CSD 000003-00004; Ex. 3-Excerpts from Deposition Transcript of Ashley Leblanc ("Leblanc Depo"), taken September 3, 2025 at 19:2-20:14, 21:10-14, 22:19-23, 23:3-7.) Even if only one of those individuals claimed to have spoken to Plaintiff that day, she provided details consistent with her claim that Plaintiff had suicidal ideation including that Plaintiff had sounding more desperate that day and was no longer responding to phone calls, that he had recently lost his job and his

relationship, that he was on suicide watch with his church, and that he had informed her of his plan to commit suicide by hanging. (*Ibid.*)

Video evidence not subject to a genuine dispute also demonstrates several of the factors that contributed to the Deputies' reasonable suspicion that Plaintiff was at risk of self-harm. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); see also *Vos v. City of Newport Beach*, 892 F.3d 1024, 1028 (9th Cir. 2018) ("The record is viewed in the light most favorable to the nonmovants ... so long as their version of the facts is not blatantly contradicted by the video evidence."). The Deputies' body worn camera footage shows that Deputies arrived at a home that was shuttered and closed off despite indications that someone was home like a car in the driveway and an open patio door. (DNOL [ECF No. 90-3], Ex. 6- Deputy Amber Sprague Body Worn Camera Footage ("Sprague BWC"), CSD 000028 at 00:29; Ex. 7- Cadigan BWC, CSD 000027 at 00:01-09:15.) Plaintiff did not respond to multiple attempts to contact him through knocks on his doors and windows and the Deputies attempts to call out to him. (DNOL [ECF No. 90-3], Ex. 6- Sprague BWC, CSD 000028 at 01:25-08:40; Exh. 7- Cadigan BWC, CSD 000027 at 00:01-09:15.) Coupled with the other factors, Plaintiff's refusal to answer knocks on the front door and windows and the shuttered, closed-off appearance of the exterior of his home could suggest one who is trying to avoid interference with a plan of self-harm.

When the Deputies finally contacted Plaintiff, he refused to come to the door to meet with the Deputies or the PERT Clinician. (DNOL [ECF No. 90-3], Ex. 7- Cadigan BWC, CSD 000027 at 9:50-11:30.) Plaintiff contends that his refusal to engage with law enforcement was a "constitutionally protected activity" but offers no authority to support such a statement. (Plaintiff's Oppo [ECF No. 94], p. 7.) Coupled with the other factors, Plaintiff's refusal to engage with law enforcement once contacted could be seen as an attempt to get law enforcement to leave so he could carry out a plan of self-harm.

-7-

No. 23-cv-00251-AGS-KSC

There is also no dispute that Plaintiff was initially contacted while seated next to a belt. (DNOL [ECF No. 90-3], Ex. 7- Cadigan BWC, CSD 000027 at 9:50-10:00.) The County Defendants' do not disagree with Plaintiff's contention that a belt has "numerous legitimate uses." (Plaintiff's Oppo [ECF No. 94], p. 7.) However, it could also constitute an instrument for hanging oneself. Its presence is another factor consistent with Reporting Parties' statement that Plaintiff intended to commit suicide by hanging.

The Deputies were entitled to consider the totality of the circumstances to form a reasonable suspicion that Plaintiff was at risk of harm. Even if each of these factors taken individually might be subject to an innocent explanation, each factor was also consistent with an individual at risk of suicide. It is far from "clearly established" that their suspicion he was at risk of harm was not reasonable considering these various factors collectively. Further, a review of these factors makes it clear that no rational factfinder could deem unreasonable the Deputies' conclusion that Plaintiff presented an imminent risk of harming himself.

## V.   IT IS NOT "CLEARLY ESTABLISHED" IT WAS EXCESSIVE FORCE FOR DEPUTY SPRAGUE TO DRAW HER FIREARM

It is not "clearly established" that it was excessive force even if Deputy Sprague pointed her firearm at Plaintiff for the brief moment he was reaching for an unidentified object. Under extreme circumstances the pointing of a gun has been held to violate the Fourth Amendment if plaintiff can establish conduct so excessive that it "shocked the conscience." *McKenzie v. Lamb,* 738 F.2d 1005, 1010 (9th Cir.1984). In *McKenzie*, the Ninth Circuit held that a raid not supported by probable cause involved excessive conduct that shocked the conscience where, among other things, police officers "pressed the barrels of their guns against appellants' heads." *Ibid.* In *Robinson v. Solano Cnty.*, 278 F.3d 1007, 1014-1016 (9th Cir. 2002), it was found to be a violation of the Fourth Amendment to point guns at the head sixty-four-year-old unarmed man but the Court nevertheless found qualified immunity because the law was not "clearly established" that it was a violation to do so.

-8-

Defendants admit there is a dispute whether Deputy Sprague ever pointed her firearm directly at Plaintiff. In his opposition, Plaintiff claims Deputy Sprague pointed her firearm at him during the brief moment when "Spinelli turns away…and Sprague is not in view." (Plaintiff's Oppo [ECF No. 94], p. 10.) However, immediately preceding that moment, Plaintiff quickly walks across the room and grabs an object near his bedside. (DNOL [ECF No. 94-3], Ex. 8 Deputy Frank Spinelli Body Worn Camera Footage, CSD 000026 ("Spinelli BWC") at 15:30-15:45.) It is only after he retrieves the object that Plaintiff can be heard saying it was his cell phone. *Ibid.* Deputy Spinelli's camera only loses sight of Deputy Sprague for the few seconds in which he retreated to cover in reaction to Plaintiff's movements. *Ibid.* When Deputy Sprague comes back into view her firearm is unholstered but pointed at the ground and holstered shortly thereafter. *Ibid.* Based on this video footage, it is indisputable that even if Deputy Sprague pointed her firearm at Plaintiff, it lasted no longer than was necessary to ensure Plaintiff was not retrieving a weapon. It is far from "clearly established" that it was excessive force to point her firearm at him under such circumstances.

## VI.    IT IS NOT "CLEARLY ESTABLISHED" IT WAS EXCESSIVE FORCE FOR PLAINTIFF TO BE HANDCUFFED

It is similarly not "clearly established" that Plaintiff's handcuffing was excessive force under these circumstances. It is well settled that claims of injury from handcuffing, if unsupported by medical records, are insufficient proof of excessive force to survive summary judgment. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001). In his opposition, Plaintiff relies on the matter of *LaLonde v. Cnty. of Riverside*, 204 F.3d 947 (9th Cir. 2000) to stand for the proposition that tight handcuffing can constitute a basis for excessive force. However, that matter is readily distinguishable from this case because the Plaintiff in that matter was barred from "introducing medical evidence, in particular testimony by a medical expert concerning the injuries the plaintiff suffered." *Id.* at 961.

///

-9-

No. 23-cv-00251-AGS-KSC

Plaintiff has produced no medical evidence of injury apart from his own testimony. In his opposition, he states that he was treated by his parents, medical doctors, available to testify at trial. (Plaintiff's Oppo [ECF No. 94], p. 10) However, he presents no affidavits supporting such a statement. Once the moving party has met its burden, the nonmoving party must point to specific facts, by affidavit or as otherwise provided by Federal Rule of Civil Procedure 56, showing that a genuine issue of material fact exists. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) More than a "scintilla of evidence" must exist to support the nonmoving party's claims. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Such scant evidence is clearly insufficient to support an excessive force claim for tight handcuffing.

## VII. PLAINTIFF FAILS TO DEMONSTRATE THE COUNTY DEFENDANTS ARE NOT ENTITLED TO STATUTORY IMMUNITY FOR THE STATE LAW CLAIMS.

In his opposition, Plaintiff claims the state law immunities don't apply because Deputies did not act "in accordance with" applicable statutes. (Plaintiff's Oppo [ECF No. 94], pp. 10-12.) As discussed above, Plaintiff has failed to demonstrate it is "clearly established" that probable cause was required for the detention, that this search did not fall under the emergency aid exception, or that their actions constituted excessive force.

## VIII. CONCLUSION

For all the reasons discussed above, Plaintiff's opposition fails to demonstrate why summary judgement should not be granted on the claims brought against Defendants on the basis of qualified immunity or state law immunity grounds.

DATED: February 27, 2026

DAMON M. BROWN, County Counsel
By: *s/Timothy A. Hanna*
TIMOTHY A. HANNA. Senior Deputy
STEVEN P. INMAN, II, Senior Deputy
Attorneys for Defendants County of San Diego, Christopher Cadigan, Amber Sprague, and Frank Spinelli

-10-