# EXHIBIT 10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JOHN DOE,

Plaintiff,

v. Case: 23-cv-00251 AGS-KSC

COUNTY OF SAN DIEGO, a government entity; CHRISTOPHER CADIGAN, an individual; AMBER SPRAGUE, an individual; ASHLEY LE BLANC, an individual; and DOES 1 TO 20, inclusive,

Defendants.

---

**CONFIDENTIAL**

VIDEO DEPOSITION OF JOHN DOE

San Diego, California

September 12, 2025

Reported by:

Stacey Stowell

CSR No. 12926

Job No. 10170681

Confidential
John Doe
John Doe vs. County of San Diego

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JOHN DOE,

Plaintiff,

v.

Case: 23-cv-00251 AGS-KSC

COUNTY OF SAN DIEGO, a government entity; CHRISTOPHER CADIGAN, an individual; AMBER SPRAGUE, an individual; ASHLEY LE BLANC, an individual; and DOES 1 TO 20, inclusive,

Defendants.

__________________________________

*CONFIDENTIAL*

Video deposition of JOHN DOE, taken on behalf of Defendants, located at 1600 Pacific Highway, Room 355, San Diego, California, beginning at 10:11 a.m. and ending 1:36 p.m. on Friday, September 12, 2025, before Stacey Stowell, Certified Shorthand Reporter No. 12926.





www.aptusCR.com

EXHIBIT 10

John Doe Confidential John Doe vs. County of San Diego

APPEARANCES:

For Plaintiff:

LAW OFFICE OF STEVE HOFFMAN
BY: STEVE HOFFMAN
Attorney at Law
1320 Columbia Street, Suite 200
San Diego, California 92101
(619) 677-3015

For Defendants County of San Diego, Christopher Cadigan, and Amber Sprague:

OFFICE OF COUNTY COUNSEL, COUNTY OF SAN DIEGO
BY: TIMOTHY HANNA
Attorney at Law
1600 Pacific Highway, Room 355
San Diego, California 92101
(619) 904-0151

For Defendant Ashley LeBlanc:

BROCKMAN QUAYLE BENNETT
BY: ROBERT H. QUAYLE IV
Attorney at Law
12481 High Bluff Drive, Suite 301
San Diego, California 92130
(858) 788-3900

ALSO PRESENT:

VICTOR MORA, APTUS VIDEOGRAPHER

me. And I also think they were violated.

**Q Okay. So just to confirm, you do not believe that this detainment advisement was read to you?**

A You know, I would defer to the video. If you have evidence showing that it was, I wouldn't fight you on that, but I don't recall it happening that way.

**Q Okay. And --**

A And even if it was, I'm a visual learner, and under the circumstances, there's not a whole lot of learning that's, you know -- intake of information and understanding something and doing something knowingly is different, right?

Anyways, sorry. I just wanted to clarify that.

**Q And so after you arrived at the psychiatric facility, how long were you waiting before you were evaluated?**

A In the registration area, maybe 20 minutes.

**Q And --**

A I was there for about a total of two hours.

**Q And you were evaluated at that location; is that right?**

A So my understanding is not admitted, but I do believe that -- that there's this initial evaluation that's required by the physician, and that that is,

**result of this incident?**

A Absolutely.

**Q What physical injuries did you sustain?**

A Okay. My wrists -- I actually had, like, a pinched nerve and, like, numbness in one of my hands for about three months. My shoulders -- you know, as a surfer that paddles a lot, you know, like, being in this position was excruciatingly painful. So my shoulders were tweaked. My range of motion on my shoulders and neck were tweaked.

And you know, I come from a family of physicians, right? So I wasn't about to go into the hospital and see a doctor and explain the background of what had happened. I just talked to my family. My sister is an M.D. My dad is an M.D. My mom is an M.D. So we just went that route.

**Q Okay. Let me ask first about your wrists.**

**You mentioned you suffered that condition for about three months; is that right?**

A Yes, I did say that; that I suffered from, like, a nerve and numbness in my wrists for about three months, yes.

**Q Okay. And you mentioned you didn't receive any formal treatment for that.**

A Correct.

**Q Did you speak with any of your medical-practicing family members about your wrist injury?**
A I did.
**Q Did they recommend any type of treatment?**
A I was told that it would, hopefully, just subside over time and go away.
**Q Okay. Had you ever injured your wrists before the incident?**
A No. Not in this manner, no.
**Q Have you ever injured your wrists in any other manner before the incident?**
A I'd never had the same injury prior to this time.
**Q I understand the same injury.**
**Any other type of wrist injury?**
A I broke a wrist, maybe radial or something like that, when I was in eighth grade. So I was, like, ten. I was pitching and fell on my -- I fell on my hand. How goofy can you get? It was kind of embarrassing, but yeah, I broke my wrist doing that, but other than that, nothing that I can recall.
**Q And how about after the incident; have you had any subsequent wrist injuries?**
A No, I have not.

I, the undersigned, a Certified Shorthand Reporter of the State of California, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were administered an oath; that a record of the proceedings was made by me using machine shorthand which was thereafter transcribed under my direction.

Further, that if the foregoing pertains to the original transcript of a deposition in a Federal Case, before completion of the proceedings, review of the transcript [ ] was [X] was not requested.

I further certify that I am neither financially interested in the action nor a relative or employee of any attorney or any party to this action.

IN WITNESS WHEREOF, I have this date subscribed my name.

Dated:  October 4, 2025



Stacey Stowell, CSR
Certificate Number 12926



EXHIBIT 10